## CIRCUIT COURT OF FAUQUIER COUNTY

Robert M. Miller, P.C.,
and Robert M. Miller

   v.

Frances S. Moore

### Case No. (Law) CL 92–284

Frances S. Moore,
f/k/a Frances Smith Miller

   v.

Robert M. Miller

### Case No. (Chancery) CH 90–227

By JUDGE JAMES H. CHAMBLIN

### November 25, 1992

After entry of the nonsuit order requested by counsel for the plaintiffs on 20 October 1992, the defendant's motion for sanctions pursuant to Section 8.01–271.1 was retained on the docket. The defendant relies entirely on her written motion, and the plaintiffs have responded thereto by the letter of Mr. Carwile filed herein dated 30 October 1992.

After consideration of the motion and Mr. Carwile's letter in response, I am of the opinion for the reasons hereinafter set forth that the motion for sanctions should be granted.

### Findings of Fact

By decree of this Court entered 21 November 1990 the plaintiff, Robert M. Miller ("Miller"), an attorney, and the defendant, Frances Smith Miller, now Frances S. Moore ("Moore") were di-

vorced. The decree incorporated by reference a Property and Support Settlement Agreement ("Agreement") dated 24 August 1990 executed not only by Miller and Moore, but also by Robert M. Miller, P.C. (the "corporation") by Miller, its president. All parties executed the Agreement in August 1990.

Paragraph 4h of the Agreement provides:

> Husband hereby agrees, both for himself personally and for Robert M. Miller, P.C., to defend, indemnify and hold wife harmless from any liability, including but not limited to, taxes, interest, penalties incurred or owed by Robert M. Miller, P.C., and indebtedness owed by Robert M. Miller, P.C., to the Marshall National Bank and Trust Company, the Fauquier National Bank, and any other party.

Paragraph 14 of the Agreement provides:

> Each party hereby waives, releases and discharges the other from any and all causes of action, claims or demands whatsoever, in law or in equity, which he or she may or might have or claim to have against the other by reason of any matter, cause, or thing whatsoever, except actions and claims founded upon the provisions of this Agreement. By execution of this Agreement, Wife and Robert M. Miller, P.C., each makes the same waiver, release, and discharge as to the other as Husband and Wife are making herein.

On 23 September 1992 the plaintiff's, Miller and the corporation, filed the motion for judgment herein alleging that Moore while an employee converted funds on eight occasions in 1989. It is not all together clear from the motion for judgment whose property was converted, i.e. whether it was Miller's, the corporation's or both. The motion for judgment lists Miller and the corporation as plaintiffs in the caption, but is signed only by "Robert M. Miller, pro se."

The allegations are that Moore converted money by checks on which she had authority to sign and once by a forgery.

When the motion for judgment was filed, the plaintiffs requested the issuance of six subpoenas *duces tecum* to various banking institutions for Moore's financial records. All the subpoenas *duces tecum* were issued and served in the latter part of September 1992. Moore was not served with process until after all the financial institutions were served.

There is pending in this Court for hearing on 3 December 1992 a rule to show cause against Miller for spousal support arrearages of

over $6,000.00. After the rule was initiated in 1991 Miller tried to have the debt discharged in bankruptcy but he was unsuccessful in July 1992. He has appealed the decision of the bankruptcy court.

Prior to the execution of the Agreement Miller made allegations in the Warrenton area about irregular conduct of Moore as to accounts in his office. Miller retracted these allegations in April 1990 by a series of letters attached as Exhibit E to Moore's motion. Miller now says that he made the retractions under threat of a prosecution for slander.

Miller now says that he was not aware of the full extent of Moore's wrongdoing when the Agreement was signed and that the estimated amount of the converted funds could be as high as $38,000.00, but that at the time he filed the motion for judgment he had "hard evidence" only as to $2,742.24.

On or about 9 October 1992 Moore filed a Demurrer and the present motion which also included a request to quash the subpoenas *duces tecum*. The motion was set for hearing on 20 October 1992 at which time Mr. Carwile appeared for the first time as counsel for the plaintiffs and moved for a nonsuit. The nonsuit was allowed, but the sanctions motion was retained on the docket. Mr. Carwile was directed to advise all the financial institutions to cease complying with the subpoenas *duces tecum*. He did so on 21 October 1992.

### Conclusions of Law

Under Section 8.01–271.1 an attorney or party signing a pleading constitutes a certificate by him that:

(1) He has read the pleading;

(2) To the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; and

(3) It is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation.

The Court must apply an objective standard of "reasonableness" in determining whether the "warranted by existing law or good faith argument for modification" portion of the statute has been violated. *Tullidge* v. *Board of Supervisors of Augusta County*, 239 Va. 611 (1990). Miller is an attorney; therefore, it must be shown that a competent attorney after reasonable inquiry could have a formed a rea-

sonable belief that his contention was well grounded in fact and warranted by existing law or a good faith argument for modification.

Applying this standard to Miller in this case I cannot find that he had a reasonable belief that Moore would be liable to him or the corporation for the alleged conversions in 1989 when in August 1990 he and the corporation agreed, in paragraph 14 of the Agreement, to release Moore "from any and all causes of action, claims or demands whatsoever, in law or equity, which [they] may or might have or claim to have against [her] by reason of any matter, cause or thing whatsoever." This is a clear release of the claims asserted in the motion for judgment. There is no limitation on the claims to only those of which Miller had knowledge in August 1990. There is no exception for claims of which "hard evidence" may appear at a later date. A release of all claims "whatsoever" clearly would include claims of which Miller might not have had knowledge of in August 1990 when the Agreement was executed.

Miller's argument that a release should be viewed as a waiver so that one can only release what he knows is not consistent with Virginia law. *See* 16 M.J., *Release*, Section 5.

Miller has not asserted that the release was obtained by fraud or by a mutual mistake of fact. The Agreement was negotiated to settle the differences between the parties arising out of the divorce. Miller's letters of April 1990 clearly show that he had some thoughts as to possible improper conduct by Moore as to funds of the corporation or his personally. It is not a question that Miller might have been completely ignorant of the alleged wrongdoing.

In simple terms the Court finds that Miller and the corporation filed suit on a claim that he knew was released. Miller is an attorney. Any plea that the motion for judgment was "poorly pleaded" is unavailing. Miller admits that another attorney drafted the motion for judgment for him. Miller's motion to strike the corporation as a plaintiff is denied because a full reading of the motion shows that Miller intended to assert a claim by the corporation as well as himself.

Not only was the motion for judgment not warranted by existing law, but also the Court finds it to have been filed for an improper purpose, specifically, to harass Moore. This finding is supported by:

(1) A competent attorney would have known that the claim had been released;

(2) The existence of the outstanding rule against Miller for spousal support arrearages in the divorce case at the time this suit was filed;

(3) The efforts by Miller to avoid and discharge in bankruptcy spousal support payments to Moore which he clearly acknowledged as being "in the nature of contractual spousal support" in paragraph 7 of the Agreement;

(4) The hostility between Miller and Moore as evidenced by the events surrounding the retraction letters;

(5) The immediate requests for the subpoenas *duces tecum* to the six financial institutions coupled with the allegations of the motion for judgment;

(6) The subpoenas *duces tecum* request documents for a five year time period (1 January 1986 to 1 January 1991) when the first alleged conversion occurred 16 February 1989 and the last on 8 November 1989; and

(7) The taking of a nonsuit and agreeing to cease pursuing the subpoenas *duces tecum* when Moore filed her motion to quash the subpoenas *duces tecum* and for sanctions.

### December 15, 1992

On 3 December 1992 these cases came before the Court for hearing on the following:

(1) The Rule to Show Cause issued against Robert M. Miller on 9 October 1992 upon the Petition of Frances S. Moore filed 9 October 1992, the hearing having been continued from 21 October 1992; and

(2) The nature of the sanctions to be imposed upon Robert M. Miller, P.C., and Miller as a result of the granting of Moore's Motion for Sanctions in the opinion letter of 25 November 1992.

At the commencement of the hearing, Miller moved the Court to rehear or reconsider its ruling on the Motion for Sanctions in light of evidence to be presented by him. The Court took Miller's motion under advisement and allowed him to present additional evidence.

The Rule and the Motion for Sanctions are addressed separately below.

For the reasons hereinafter set forth, the Court finds Miller in willful contempt in Chancery No. CH 90–227 for not paying to Moore the payments required under paragraph 7 of the Property and Support Settlement Agreement dated 24 August 1990 and incorporated into the final divorce decree entered 21 November 1990, but he will be given time to pay in full the arrearage and Moore's attorney fees and expenses in order to purge himself of his contempt; and, as to the sanctions issue, the Court denies Miller's motion to rehear and re-

consider and finds that even considering the evidence presented 3 December 1992, sanctions are appropriate, and are imposed in the form of requiring Miller and the corporation to pay all of Moore's counsel fees and expenses in Law No. CL 92–284.

### Rule to Show Cause

At the beginning of the hearing Miller conceded and admitted that he had not paid the total sum of $7500.00 due as of the time of the hearing under paragraph 7 of the Agreement. Almost all of the evidence he presented related to the sanctions issue. Miller has not paid because he filed a petition in bankruptcy and felt the automatic stay relieved him of the responsibility. He has failed in an attempt to obtain a discharge of the debt from the bankruptcy court, but has appealed that decision. There has been no judicial determination that the debt is dischargeable. Therefore, it is a valid debt owed to Moore under the Agreement incorporated in the final divorce decree and can be enforced by a contempt proceeding.

Miller is a practicing attorney in Warrenton. He offered no evidence of his present financial position or ability to pay. This Court is well aware of the fees customarily charged by attorneys in the Warrenton area. Absent anything to the contrary, this Court cannot find Miller to be without means to pay the arrearage. The burden is on Miller to show cause why he should not be held in contempt. He has not met that burden.

A second allegation in Moore's petition is that Miller is in contempt for having filed the motion for judgment in Law No. CL 92–284 despite the indemnity and release provisions of the Agreement. The Court agrees for the reasons set forth in the opinion letter of 25 November 1992 and as set forth below. However, the finding of contempt and the resulting ruling is based primarily on the non-payment of the sums due Moore under the Agreement. Even if the second issue were not involved and the only issue were the non-payment of sums due under the Agreement, then this Court would have still held Miller in contempt and ruled the same as a result thereof.

By letter dated 7 December 1992 and received by me on the same day at 10:15 a.m., Mr. McCahill advised the Court that Miller had paid Randolph-Macon Academy the sum of $6700.00 toward the past due account with the school. This Court recognizes that Miller seriously considered the comments from the bench at the close of the hearing that it was most disturbing that an innocent third party,

Moore's son at Randolph-Macon, was suffering as a result of Miller's failure to abide by his agreement in August 1990.

The Court finds Miller in willful contempt, but he is given until 15 January 1993 to pay in full all the remaining arrearage of $800.00 ($7500.00 minus $6700.00) and he is given until 15 February 1993 to pay in full Moore's attorney fees of $903.75 and costs of $7.73 (a total of $911.48) to Mr. McCahill for the Rule in order to purge himself of his contempt.

The attorney fees and costs are calculated as follows:

| | | |
|---|---|---:|
| (1) | Fees incurred on Rule from 7 July 1992 to 30 November 1992 per affidavit admitted in evidence (2.4 hours at $150.00 per hour) | $360.00 |
| (2) | Costs incurred per affidavit admitted in evidence | 7.73 |
| (3) | Fees incurred for hearing on 3 December 1992 (one-half of time spent - other half on sanctions motion - by Mr. McCahill on 3 December 1992, being 5.25 hours, 8:30 a.m. to 1:45 p.m.) | 393.75 |
| (4) | Fee to prepare and have entered a decree consistent herewith (one hour at $150 per hour) as to Rule | 150.00 |
| | TOTAL ATTORNEY FEES AND COSTS | $911.48 |

### Sanctions Motion

Even after hearing the evidence presented on 3 December 1992, I am of the opinion that Miller filed the motion for judgment in Law No. CL 92–284 on a claim that a reasonable attorney under an objective standard should have known was released under the Agreement and that it was filed for an improper purpose, i.e. to harass Moore for the reasons stated in the opinion letter of 25 November 1992. The claims against Moore in the motion for judgment arise out of alleged misappropriations by Moore out of Miller's law practice account. Miller clearly acknowledged that before the Agreement was executed he had accused Moore of certain inappropriate actions as to the office accounts. He admitted that he sent letters of retraction of certain statements he had made about Moore before the Agreement was executed, and that the release provisions in the Agreement were inserted because of what he said earlier about Moore. Miller relies on the advice he received from another attorney before he filed suit, but he never told the other attorney about the allegations in the letters of retraction. Miller and the other attorney did no research on releases or waivers before the motion for judgment was filed.

The motion to rehear or reconsider the ruling on the sanctions motion is denied. Moore should never have had to defend the motion for judgment filed in Law No. CL 92–284. Accordingly, the corporation and Miller, as the sanction, shall pay to Moore or her attorney on or before 15 February 1993 the sum of $1963.50, representing the total attorney fees of $1923.75 and costs of $39.75, calculated as follows:

(1) Fees incurred in defending Law No. CL 92–284 from 5 October 1992 to 30 November 1992 per affidavit admitted in evidence (9.2 hours at $150.00 per hour)      $1380.00

(2) Costs incurred per affidavit admitted in evidence      39.75

(3) Fees incurred for hearing on 3 December 1992 (one-half of time spent - other half on Rule by Mr. McCahill on 3 December 1992, being 5.25 hours, 8:30 a.m. to 1:45 p.m.)      393.75

(4) Fee to prepare and have entered an order consistent herewith (one hour at $150 per hour) as to the sanctions motion      150.00

TOTAL ATTORNEY FEES AND COSTS      $1963.50

The Court finds all fees and costs incurred by Moore to be reasonable.